```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

MADELEINE L.L.C.,

              Plaintiff,                         OPINION

         -against-                           08 Civ. 10520 (MGC)

BRIAN STREET and JAMES H. COHEN,


              Defendants.

---------------------------------------X


APPEARANCES:


         SCHULTE ROTH & ZABEL LLP
         Attorneys for Plaintiff
         919 Third Avenue
         New York, New York 10022

         BY:  Howard O. Godnick, Esq.
              Michael G. Cutini, Esq.
              Assunta Vivolo, Esq.


         HERRICK, FEINSTEIN LLP
         Attorneys for Defendants
         2 Park Avenue
         New York, New York 10016

         BY: Patricia M. Graham, Esq.
             Raymond N. Hannigan, Esq.
             Frederick Schmidt, Esq.
             Jason A. D'Angelo, Esq.
```

**CEDARBAUM, J.**

This is a diversity action between Madeleine L.L.C., the lender of a multimillion dollar mezzanine loan, and Brian Street and James H. Cohen, the loan's guarantors. The complaint asserts two claims, denominated the First and Second Causes of Action. The parties have cross-moved for summary judgment on the second claim, which complains that the encumbrance of collateral securing the loan triggered a full recourse provision in the guaranty.[1]

Madeleine seeks summary judgment against Street and Cohen for the full outstanding balance of the loan. Street and Cohen seek summary judgment dismissing the second claim. They argue that the full recourse provision of the guaranty was never triggered, and that, even if it had been, it would be unenforceable under New York law. For the reasons that follow, defendants' motion is granted, and plaintiff's motion is denied. Accordingly, the second claim of the complaint is dismissed.

---

[1] Although both sides originally moved for judgment on the pleadings, they have compiled a voluminous record outside the pleadings. Accordingly, on March 11, 2010, I converted the pending motions into motions for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure.

**BACKGROUND**

At all times relevant to this lawsuit, Street and Cohen controlled a group of interlocking companies engaged in real estate development in Florida. In 2006, Madeleine provided a mezzanine loan of up to $275 million ("the Loan") to some of these companies ("the Borrowers") for the development of several condominium projects ("the Properties"). The terms of the Loan were laid out in the Mezzanine Loan and Security Agreement ("the Loan Agreement").

Under the lending arrangement, title to a given Property did not belong to a Borrower. Instead, it belonged to an entity in which a Borrower held equity ("the Property Owner"). In other words, the Property Owner owned the Property, and the Borrower owned some portion of the Property Owner.

Madeleine secured the Loan through two forms of collateral. First, each Property was subject to a separate Pledge and Security Agreement ("Pledge Agreement"), under which the Borrower for that Property pledged certain ownership interests in its subsidiary Property Owner. The various Pledge Agreements shared the same substantive provisions, differing only in the names of the entities to which they applied. Second, under a separate Recourse

Carveouts Guaranty ("the Guaranty"), Street and Cohen agreed to guaranty the Loan.

Section 2.2(b) of the Guaranty is a full recourse provision enumerating certain limited circumstances in which Street and Cohen become personally liable to Madeleine for the full amount of the Loan. Under Section 2.2(b)(i), one such circumstance is "[a]n Event of Default by reason of the voluntary transfer or encumbrance of any collateral for the Loan in violation of the terms of the Loan Agreement which remains uncured 10 days after Lender's written demand upon the Guarantor." Although the term "Event of Default" is not defined in the Guaranty, Section 6.11 of the Guaranty specifies that any undefined, capitalized term shall have the meaning given to it in the Pledge Agreement. Section 9(a) of the Pledge Agreement supplies that meaning. It lists eight different events, each of which qualifies as an Event of Default. Because this list prescribes the only ways in which an Event of Default may occur under the Pledge Agreement, the occurrence of at least one of the events listed is a necessary condition for full recourse liability under Section 2.2(b)(i) of the Guaranty.

This dispute arose when Madeleine concluded that a Property Owner, BLIA Developers, Ltd., had caused one of

4

those Events of Default to occur.  BLIA Developers held title to one of the Properties, a luxury condominium development known as Biscayne Landing.  Purchasers of units in Biscayne Landing made cash deposits that were placed in escrow on behalf of BLIA Developers.  According to Madeleine, only BLIA Developers was entitled to the interest that accrued on those escrowed deposits.  On two occasions in 2007, however, a representative of Street and Cohen directed the escrow agent to transfer accrued interest to the management company that administered all of the Properties.  After the escrow agent executed the transfers, the management company used those funds, approximately $490,000 in total, to help pay other Properties' expenses.

When Madeleine discovered these transfers in 2008, it notified Street and Cohen that the transfers qualified as an Event of Default under Section 9(a) of the Pledge Agreement for Biscayne Landing.  Consistent with the terms of Section 2.2(b)(i) of the Guaranty, Madeleine's notice demanded that Street and Cohen repay the transferred amount plus interest within ten days.  Street and Cohen balked at this demand.  They denied that any Event of Default had occurred and, consequently, that any duty to cure existed.  Following this exchange, Madeleine informed Street and

Cohen that under Section 2.2(b)(i) of the Guaranty, their failure to cure rendered them liable for the full outstanding balance of the Loan plus interest--by that point, well over $188 million.  Street and Cohen again refused to pay, and this action followed.

## DISCUSSION

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists when the evidence is such that a reasonable finder of fact could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

Under New York law, which the parties agree governs this dispute, the "initial interpretation of a contract is a matter of law for the court to decide."  K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996) (internal quotation mark omitted).  If the contract is unambiguous, that is, only susceptible to one reasonable interpretation, the court must "give effect to the contract as written."  Id. at 637.

6

The threshold issue is the occurrence of an Event of Default under Section 9(a) of the applicable Pledge Agreement, which is a prerequisite to the guarantors' full recourse liability under Section 2.2(b)(i) of the Guaranty. In its notice to Street and Cohen, Madeleine invoked Section 9(a)(i), the first of the eight possible Events of Default enumerated in Section 9(a). That section describes an occurrence in which "Pledgor transfers or encumbers any portion of the Collateral in violation hereof or of the Loan Agreement." Pledge Agreement § 9(a)(i).

According to its plain language, Section 9(a)(i) only covers actions taken by the "Pledgor." The Pledge Agreement covering Biscayne Landing identifies only one entity as the Pledgor: North Miami Land Holdings, Ltd. ("NMLH"). Therefore, only NMLH is capable of committing an Event of Default under Section 9(a)(i) of the applicable Pledge Agreement.

NMLH was not, however, the entity that actually made the challenged transfers here. It was BLIA Developers, rather than NMLH, that owned the account in which the funds were held. It was a representative of Street and Cohen, rather than NMLH, who directed that the funds be transferred. And it was the escrow agent, rather than NMLH, that actually carried out the transfer.

7

Madeleine asks the Court to elide the distinctions between these actors. It emphasizes that the guarantors effectively controlled NMLH and that NMLH held nearly all of the equity in BLIA Developers. As a result, Madeleine contends, the guarantors' transfer of BLIA Developers' money qualifies as the Pledgor's transfer, notwithstanding NMLH's absence from the entire transaction. But the precise drafting of the Pledge Agreement does not support this theory. "Pledgor" is an explicitly defined term, and Section 9(a)(i) refers only to the entity satisfying that explicit definition. Moreover, the drafters of the agreement coined a separate term for a pledged subsidiary such as BLIA Developers. Such an entity is called an "Issuer." See Pledge Agreement, 3 & Schedule I. Several Events of Default listed in Section 9(a) cover both the conduct of an Issuer and the conduct of the Pledgor. E.g., Pledge Agreement §§ 9(a)(iii), (iv), (vi). The Event of Default in Section 9(a)(i), by contrast, covers only the Pledgor's conduct and not an Issuer's. The selective use of the term "Issuer" indicates a deliberate distinction between Events of Default that an Issuer is capable of triggering and Events of Default that an Issuer is not capable of triggering. Section 9(a)(i) falls in the latter

8

category.  Accordingly, no Event of Default occurred under Section 9(a)(i).

This conclusion disposes of the only Event of Default that Madeleine relied on in its notice demanding cure. Madeleine now contends that a different Event of Default occurred under a provision that did not appear in its notice.  It points to Article VIII of the Loan Agreement, which provides an entirely different catalogue of Events of Default — separate from the Events of Default listed in the Pledge Agreement.  That catalogue contains a catchall provision, Section 8.1(f), stating that an Event of Default under the Loan Agreement occurs if any of the Borrowers' constituent entities, including BLIA Developers, "shall fail to perform any other term, covenant or agreement contained in any Loan Document . . . ."  Madeleine then turns to Section 7.2(r) and Schedule T of the Loan Agreement, which impose various bankruptcy remoteness requirements on all Property Owners, again including BLIA Developers.  Madeleine argues that if BLIA Developers violated Section 7.2(r) and Schedule T, it failed to perform an agreement, and, in so doing, committed an Event of Default under Section 8.1(f) of the Loan Agreement.

This reasoning is unpersuasive.  As discussed above, full recourse liability under Section 2.2(b)(i) of the

9

Guaranty depends on an Event of Default under the Pledge Agreement. An Event of Default under the Loan Agreement is defined differently from an Event of Default under the Pledge Agreement. The two are distinct, impose separate obligations, and provide for separate remedies. They should not be conflated. As a result, an Event of Default under the Loan Agreement is irrelevant except to the extent that its occurrence somehow triggers an Event of Default under the Pledge Agreement. In other words, even if Madeleine can show that the transfer of funds constituted an Event of Default under Section 8.1(f) of the Loan Agreement, it cannot succeed on a full recourse claim against Street and Cohen unless it can also identify some way to translate that showing into an Event of Default under the Pledge Agreement.

Madeleine has not done so. It relies only on Section 9(a)(vii) of the Pledge Agreement, which provides that the occurrence of "a Loan Document Event of Default" constitutes an Event of Default under the Pledge Agreement. Because the Loan Agreement is part of the Loan Documents, Madeleine contends that Section 9(a)(vii) effectively converts any Event of Default under the Loan Agreement into an Event of Default under the Pledge Agreement. But the precise definition of a contractual term dictates a

10

different result.  The Pledge Agreement defines a "Loan Document Event of Default" as "a default by <u>Pledgor</u> under any of the Loan Documents, which default remains outstanding beyond applicable notice and grace periods, if any."  Pledge Agreement, 2 (emphasis added).  Section 9(a)(vii), like Section 9(a)(i), applies solely to activity by the Pledgor, NMLH.  Thus, Madeleine's reliance on each of these provisions fails for the same reason: the identity of the transferor.

Because there has been no Event of Default within the meaning of the Pledge Agreement for Biscayne Landing, no full recourse liability arose under Section 2.2(b)(i) of the Guaranty.  Accordingly, I do not reach the question of whether under New York law that provision is enforceable.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is granted and plaintiff's motion is denied. The second claim of the complaint is dismissed.

SO ORDERED.

Date:   New York, New York
        December 23, 2010

                                    S/_____
                                       MIRIAM GOLDMAN CEDARBAUM
                                     United States District Judge